UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

JOSE BETANCOURT,

       Petitioner,

  -v-                                                   No. 10-CR-905-LTS
                                                          No. 17-CV-4750-LTS

UNITED STATES OF AMERICA,

       Respondent.

-------------------------------------------------------x

MEMORANDUM ORDER

       Petitioner Jose Betancourt ("Petitioner" or "Betancourt") was convicted on May 15, 2013, upon a guilty plea, of conspiring to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. sections 846 and 841(b)(1)(A), and was sentenced principally to a custodial term of 120 months of imprisonment. (Am. Judgment, Docket Entry No. 1471.[1]) Petitioner now moves, pro se, pursuant to 28 U.S.C. section 2255 to vacate, set aside, or correct his conviction based on ineffective assistance of counsel. He contends that he only entered into his plea agreement because he was depressed and argues that his counsel prevented him from attending safety valve proffer sessions and negotiated a plea agreement that provided him with no benefit.

       The Court has reviewed thoroughly the parties' submissions in connection with Petitioner's 28 U.S.C. section 2255 motion (the "Petition," Docket Entry No. 1988), construing Petitioner's arguments liberally "to raise the strongest arguments that they suggest," Graham v.

---

[1]     Unless otherwise noted, all citations are to the criminal docket, No. 10-cr-905.

Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted). For the following reasons, Petitioner's motion is denied in its entirety.

## BACKGROUND

Petitioner was originally charged with two counts of conspiracy to distribute more than 1,000 kilograms of marijuana in violation of 21 U.S.C. sections 841(b)(1)(A) and 846 for his alleged role in transporting marijuana for a larger narcotics organization. (S12 Superseding Indictment, Docket Entry No. 130.)

Prior to his guilty plea, Petitioner attended a safety valve proffer session. (Government Opp'n, Docket Entry No. 2159, at 4; Betancourt Aff., Docket Entry Nos. 1988-1 and 1988-2, ¶ 9.) The Government contends, and Betancourt tacitly acknowledges, that he lied at this proffer. (Government Opp'n at 4; Betancourt Aff. ¶ 9 (arguing that Betancourt's truthfulness does not affect his safety valve eligibility so long as he is truthful at any time before his sentencing).) The Government also contends that Betancourt played a management or leadership role in the narcotics conspiracy, citing testimony by Edwin Herrera, a co-defendant, at the trial of Daniel Fernandez, another co-defendant. Herrera, was asked whether he had ever seen anyone aside from Betancourt at a warehouse central to the transportation of drugs in this case and responded that:

> Yes. I would call Jose [Betancourt] and would set up trips, the loads. I would call him and he would tell me to drive up to the warehouse. I would pull up to the loading dock and there would be a semi-trailer next to it and I would wait for him. He would tell me he would be there in a couple seconds, but instead of him showing up, it would be another individual.

(Docket Entry No. 2159 at ECF pg. 9.) In his affidavit in support of the instant motion, Betancourt asserts that he had no decision-making role in connection with the drug

distribution organization and that he took direction from Fernandez, among others, whose orders he would transmit. (Betancourt Aff. ¶ 9.)

On May 9, 2013, the Government sent a letter setting forth the Government's position pursuant to United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991). (Pimentel Letter, Docket Entry No. 2159, ECF pgs. 13-16.) The letter detailed the Government's sentencing guidelines calculations, including a total offense level of 37. (Id. at ECF pgs. 14-15.) This level was computed using a base offense level for the two conspiracy charges of 32, U.S.S.G. §§ 2D1.1(a)(5) and (c)(4), a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. sections 3E1.1(a) and (b), and the following enhancements: (1) two levels for acting as an organizer, leader, or manager pursuant to U.S.S.G. § 2D1.1(b)(14)(E); four levels for organizing or leading a criminal activity involving five or more participants pursuant to U.S.S.G. § 3B1.1(a); and two levels for willfully obstructing or impeding the administration of justice by lying during his safety valve proffer pursuant to U.S.S.G. § 3C1.1. His total offense level of 37, when combined with his criminal history category of I, resulted in a guidelines sentence of 210 to 262 months. (Pimentel Letter at ECF pg. 15.)

On May 15, 2013, Betancourt pleaded guilty to Count Two only, pursuant to a plea agreement (the "Plea Agreement"). Although the base offense level for the single conspiracy count remained 32, the parties stipulated that no enhancements would apply and, when accounting for the three-point reduction for Betancourt's acceptance of responsibility, his total offense level was 29. (Plea Agreement at 2.) Accordingly, Petitioner's calculated guidelines range was 87 to 108 months of imprisonment, but he was subject to a statutory minimum sentence of 120 months of imprisonment, which the parties stipulated was his guideline sentence. (Id. at 3); see also 21 U.S.C. § 841(b)(1)(A); see also U.S.S.G. § 5G1.1(b)

(when the statutory minimum sentence is greater than the maximum sentence calculated under the guidelines, the statutory minimum becomes the guidelines sentence). The parties also agreed that Petitioner was ineligible for relief from his mandatory minimum sentence pursuant to the "safety valve" provision of 18 U.S.C. section 3553(f). (Plea Agreement at 3.) Although the parties did not include an obstruction of justice enhancement in their stipulated guidelines calculations, the Plea Agreement provided that

> nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, . . . regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

(Plea Agreement at 3-4.)

Petitioner proffers that, at the time he pleaded guilty, he was severely depressed due to his mother's severe illness, the recent death of his father in January 2012, and his son's involuntary commitment proceedings related to his substance abuse. (Betancourt Aff. ¶ 7.) Betancourt states that he only signed the Plea Agreement because he was depressed and because his then-attorney, Peter Raben, "told him to do so" or else "the government would seek a guideline increase for [Betancourt's] role in the offense." (Id. ¶¶ 7-8.) Mr. Raben was relieved as counsel on August 7, 2013. (Order, Docket Entry No. 1218.)

By letter dated November 19, 2013, Betancourt moved to withdraw from the Plea Agreement, but leave his guilty plea intact. (Docket Entry No. 1314.) The Court denied that motion, finding that Betancourt did not proffer a "fair and just reason" for such a withdrawal. (January 29, 2014, Mem. Order (the "January Order"), Docket Entry No. 1364.) The Court specifically found that Betancourt's bald assertions that he only

entered the Plea Agreement because he was depressed did not overcome his contrary representations at his change of plea hearing, and held that he was capable of making intelligent decisions at the time of the plea and that he fully understood the terms of the Plea Agreement and had discussed them with his attorney.  (Id. at 3-5.)

Petitioner appealed the January Order and, for the first time, raised the contention that he had received ineffective assistance from his former counsel, Raben. United States v. Betancourt, 645 Fed. App'x 66 (2d Cir. 2016.)  The Second Circuit affirmed the Court's denial of Betancourt's motion to withdraw from the Plea Agreement, but declined to adjudicate his claim for ineffective assistance of counsel because it was first raised on appeal.  Id. at 71-72.

Petitioner contends that he had desired a second safety valve proffer, but that Raben "did not permit" him to schedule one.  (Betancourt Aff. ¶ 9.)

DISCUSSION

A petitioner may prevail on a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. section 2255 if he can show that his sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack.  The grounds for relief under section 2255 are limited, out of "respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks and citation omitted).

To prevail on an ineffective assistance of counsel claim, Petitioner must show that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) Petitioner was prejudiced as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 688-94 (1984). In determining whether counsel's performance was deficient, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the challenger's burden is to show that the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-89. "Prejudice is established if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Flores v. Demskie, 215 F.3d 293, 304 (2d Cir. 2000) (quoting id. at 694 (internal quotation marks omitted)).

Betancourt fails to demonstrate ineffective assistance of counsel to the extent that he contends that he received no benefit from the Plea Agreement that stipulated he was safety valve-ineligible. He argues that he was prejudiced by his ineligibility for the safety valve because he was sentenced according to the statutory minimum of 120 months of imprisonment, which, if he had been found to be safety valve-eligible, could have been disregarded in favor of his otherwise applicable calculated guidelines range of 87 to 108 months. 28 U.S.C. § 3553(f).

Although Petitioner did give up important rights, such as the right to seek relief pursuant to the safety valve, in the Plea Agreement, the agreement also conferred substantial benefits on him. Specifically, the Government agreed to stipulate to the removal of all offense level enhancements, including the obstruction of justice enhancement for lying during his proffer, thereby drastically reducing his guidelines exposure from a range of 210 to 262 months to 120 months. Agreeing to stipulate to safety valve ineligibility in exchange for other relief

resulting in a lower guidelines range is well within the range of competent representation. See Lendof v. United States, Nos. 00 CV 4312 SAS and 99 CR 286 SAS, 2001 WL 327155, at *7 (S.D.N.Y. Apr. 4, 2001) ("[C]ounsel's decision to forego safety valve eligibility in exchange for a significantly lighter sentence . . . cannot be faulted.")

Furthermore, Petitioner does not meet his burden of establishing that this decision was prejudicial insofar as he fails to demonstrate that he would likely have qualified for the safety valve but for Raben's purportedly deficient conduct. To qualify for the safety valve a defendant has the burden of proving that: (1) he "does not have more than 1 criminal history point"; (2) he did not use violence, threats of violence, or possess a firearm or other weapon in connection with the charged crime; (3) "the offense did not result in death or serious bodily injury"; (4) he was not an "organizer, leader, manager, or supervisor"; and (5) "not later than the time of the sentencing hearing, [he] has truthfully provided to the Government all information and evidence [that he] has concerning the offense." 18 U.S.C. § 3553(f) (2017).

Petitioner fails to provide any objective evidence that he would have told the truth at a future proffer. In his affidavit, Petitioner seems to imply that he would have eventually been truthful with the Government,[2] but such self-serving assertions by a petitioner are, alone, insufficient to meet his burden, especially in light of Betancourt's tacit acknowledgement that he had lied at a previous proffer. See Pena v. United States, 06 CV 12945 (KTD), 2010 U.S. Dist. LEXIS 73641, at *8-10 (S.D.N.Y. July 14, 2010) (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003)) (finding that a petitioner's bare assertion that he would be truthful in a safety

---

[2]  Betancourt states in his affidavit that "[w]hether [he] was untruthful at a prior safety valve proffer does not control[,] . . . [w]hat controls is whether prior to sentencing [he] is truthful." (Betancourt Aff. ¶ 9.)

valve proffer was, alone, insufficient to demonstrate that but for counsel's errors he would have qualified for safety valve relief). Furthermore, the Government has proffered testimony from co-defendant Herrera, from which a factfinder could infer that Betancourt held a leadership or management role in the drug transportation operation, against which Petitioner offers only his bare assertion that he was not a leader or manager within the meaning of 18 U.S.C. section 3553(f)(4) and took his direction from Fernandez.  See Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) ("[T]he prejudice determination 'may be made with the benefit of hindsight.'" (quoting Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994))).  Herrera's statement that Betancourt said he would meet him, but instead sent another individual, could support an inference that Betancourt was managing a workforce in support of the drug transportation operation.  Thus, Petitioner has established neither prejudice nor unreasonably deficient performance with respect to Raben's conduct in negotiating the Plea Agreement.

Petitioner also fails to establish that Raben's representation was ineffective with respect to his refusal to schedule a second proffer with the Government.  Petitioner is correct in observing that pervious dishonesty does not render him ineligible for the safety valve if he truthfully and fully discloses his role in the offense prior to sentencing.  See United States v. Schreiber, 191 F.3d 103 (2d Cir. 1999).  The Second Circuit, however, has cautioned that a previous lack of candor may damage a defendant's credibility and undermine his ability to prove to the court that that he has been fully truthful with the Government.  See id. at 106-108.  Raben's decision not to arrange a second proffer session after Betancourt lied at the first session cannot be faulted.  Given the presumption of competence owed to counsel, the Court cannot find objectively unreasonable performance where counsel shielded Petitioner from further exposure to an obstruction of justice guideline enhancement and reduced the risk that Betancourt would

further undermine his own credibility.  Cf. United States v. Monzon, 359 F.3d 110, 120 (2d Cir. 2004) (upholding a district court's determination that a counsel's intervention to stop a defendant from lying at a safety valve proffer and thereby damaging her chances of gaining the Government's recommendation, was not objectively unreasonable conduct).

Petitioner also fails to establish prejudice insofar as he has not demonstrated that, had Raben facilitated another proffer session, Betancourt would have been fully truthful with the Government and proven that he had no role as a leader or organizer pursuant to 18 U.S.C. section 3553(f)(4) for the same reasons previously discussed.  Accordingly, the Court denies the Petition with respect to Raben's failure to arrange a subsequent proffer session.

Petitioner's affidavit also states that he only agreed to the Plea Agreement because he was depressed and Raben told him that, if he did not agree, the Government would seek a guidelines sentence against him subject to the enhancements detailed in the Pimentel letter.  As Petitioner has proffered no new relevant facts as to his ability to make competent and intelligent decisions, the Court finds no basis to question the voluntariness or validity of the Plea Agreement, for the same reasons set forth in the January Order.  The fact that Raben provided his assessment of the Government's likely actions if Petitioner did not agree to the Plea Agreement does not undermine Petitioner's voluntary assent to the Plea Agreement or constitute unreasonable conduct by counsel.

## CONCLUSION

For the foregoing reasons, Petitioner's motion brought pursuant to 28 U.S.C. section 2255 is denied in its entirety.

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C.S. § 2253(c)(1) (LexisNexis 2008).  A certificate will be

granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.S. § 2253(c)(2) (LexisNexis 2008); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealabilty). The Court finds that Petitioner will not be able to sustain this burden and declines to issue a certificate of appealability. Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

Although Petitioner has not updated his address with the Court, the Bureau of Prisons' Inmate Locator lists Petitioner's current facility as FCI Miami. The Clerk of Court is directed to update the docket accordingly and to mail any subsequent correspondence to the address listed at the end of this Memorandum Order.

The Memorandum Order resolves Docket Entry No. 1988.

SO ORDERED.

Dated: New York, New York
May 1, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy mailed to:
Jose Betancourt
Prisoner No.: 94717-004
FCI Miami
PO Box 779800
Miami, FL 33177